IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LORRAINE ELIZABETH SARICH, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v.  ) <br> ) <br> COMMISSIONER of the Social ) <br> Security Administration, ) <br> ) <br> **Defendant.** ) | Case No. CIV-18-218-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Lorraine Elizabeth Sarich requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty years old at the time of the administrative hearing (Tr. 33, 253). She completed high school and two years of college and has worked as a real estate agent (Tr. 23, 281). The claimant alleges she has been unable to work since an amended onset date of May 30, 2013, due to depression, post-traumatic stress disorder, and seasonal adjustment disorder (Tr. 280).

## Procedural History

On April 30, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated June 8, 2017 (Tr. 15-25). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations of avoiding unprotected heights and moving machinery; the inability to climb ladders, ropes, or

scaffolds; and the inability to perform *frequent* overhead reaching with the right shoulder. Finally, he determined that she could understand, remember, and apply simple instructions with adequate pace and persistence to successfully complete simple tasks with routine supervision, that she could have occasional interaction with co-workers and supervisors but not work-related contact with the public, and that she required a work environment with no strict production quotas such as assembly line work (Tr. 21). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *e. g.*, housekeeper/cleaner, bottling line attendant, and conveyor-line bakery worker (Tr. 24).

## Review

The claimant contends that the ALJ erred by failing to identify jobs at step five that were consistent with the assigned RFC. The undersigned Magistrate Judge finds this contention unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of depression, anxiety disorder, personality disorder with cluster B traits, post-traumatic stress disorder (PTSD), and differential diagnosis of seizures (Tr. 18). At the administrative hearing, the ALJ elicited testimony from a vocational expert ("VE") to determine if the claimant could perform her past relevant work or if there were other jobs the claimant could perform with her limitations. He posed a series of hypothetical questions requiring the VE to assume various limitations and identify the work someone with such limitations could perform. First, the ALJ posited an individual with the age, education and work history of the claimant who:

> would be limited to light work. The individual would be limited to just occasional contact with co-workers and supervisors, would have no work-related contact with the general public, would be capable of understanding, remembering, and applying simple instructions with adequate pace and persistence to successfully complete simple tasks with routine supervision. . . . The individual would require a work environment with no strict production quotas such as assembly line work. Would further need to avoid unprotected heights and dangerous moving machinery, would be unable to climb ladders, ropes or scaffolding and would be restricted from frequent overhead reaching with the right shoulder or the right – upper extremity.

(Tr 61-62). The VE testified that such an individual would not be able to perform her past relevant work, then identified three light, unskilled jobs such a person could perform: (i) housekeeping cleaner, DICOT § 323.687-014; (ii) bottling line attendant, DICOT § 920.687-042; and (iii) conveyor line bakery worker, DICOT § 524.687.022. The ALJ asked if the VE's testimony was consistent with the job descriptions contained in the Dictionary of Occupational Titles ("DOT"), and she stated that it was, but elaborated that the DOT did not address "off-task behavior or a decrease in productivity and how that would impact the job base," or "the frequency of interaction with co-workers, supervisors or the public" (Tr. 62-63). She testified that her testimony as to those was based on "observation and experience as well as interpretation of the DOT" (Tr. 63). When the claimant's representative inquired about the bottling line and conveyor line jobs in the context of dangerous moving machinery, the VE testified that "those jobs are really inspector type jobs" that she would not consider dangerous (Tr. 64). As to the housekeeping/cleaner job, the claimant's representative asked if there was frequent overhead reaching for the job and she testified, "No" (Tr. 64). She elaborated, stating that

"There would be cleaning, but there would not be frequent usage overhead for that," and she explained that reaching overhead would be less than one third of the day (Tr. 64-65).

In his written decision, the ALJ determined that the claimant's RFC included the limitations from the hypothetical described above (Tr. 20-21). He then adopted the VE's testimony that the claimant could perform the light jobs of housekeeping cleaner, bottling line attendant, and conveyor line bakery worker, and he further found that the VE's "testimony [wa]s consistent with the information contained in the [DOT]" (Tr. 25).

The claimant first asserts that the ALJ erred in identifying jobs she can perform at step five because the jobs of bottling line attendant and conveyor-line bakery worker require her to work in an assembly line, production quota environment. "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). However, the VE's testimony was that these jobs were "inspector type jobs," and the undersigned Magistrate Judge agrees with the Commissioner that neither of the DOT descriptions for these jobs appear to require a production-rate pace. *See* DICOT §§ 323.687-014, 524.687.022. Additionally, the undersigned Magistrate Judge notes that other Courts appear to conclude "even when a job entails the act of producing, packaging, or assembling, this does not necessitate that the job also requires a certain production or assembly-line pace." *Vizzini v. Berryhill*, 2018

WL 4561623, at *4 (W.D. N.C. Sept. 24, 2018) (collecting cases). *See also Browning v. Berryhill*, 2018 WL 6187525, at *4 (S.D. W.V. Nov. 9, 2018) (unchallenged VE testimony that conveyor line bakery worker position would not require rapid pace or strict production quotas); *Berlener v. Colvin*, 2015 WL 4920772, at *5 (E.D. Missouri Aug. 18, 2015) (VE testified that job of bottling line attendant would not require production quota, affirmed on other grounds); *Wilkerson v. Berryhill*, 2017 WL 4340365, at *11 (N.D. Calif. Sept. 29, 2017) (unchallenged VE testimony that bottling line attendant position had a "less than average emphasis on production quotas").

But even assuming *arguendo* that the jobs of bottling line attendant and conveyor-line bakery worker require an impermissible production quota environment by virtue of the presence of the conveyor belt, such a finding would be harmless error because the claimant could still perform the job of housekeeping/cleaner. The claimant asserts that because the job requires frequent reaching under the DICOT listing, an impermissible conflict exists. However, the VE specifically testified that frequent reaching did not translate to frequent *overhead* reaching and would only be performed occasionally here. *See also Segovia v. Astrue*, 226 Fed. Appx. 801, 804 (10th Cir. 2007) ("[E]ven a job requiring frequent reaching does not necessarily require more than occasional *overhead* reaching. The VE was aware of Ms. Segovia's limitations on overhead reaching[.] In these circumstances, the VE's testimony . . . clarifies how [] broad characterizations apply to this specific case."). As such, this job is not in conflict with the claimant's RFC. Accordingly, the errors identified with the other two jobs are classified as harmless error, because there is a still a job the claimant can perform and the claimant has not alleged that the housekeeping/cleaner

job does not exist in significant numbers. *See, e. g., Stokes v. Astrue*, 274 Fed. Appx. 675, 684 (10th Cir. 2008) (finding any error on whether claimant could perform job was harmless error since there were still two jobs claimant could perform and no "reasonable factfinder could have determined that suitable jobs did not exist in significant numbers in either the region where Ms. Stokes lives or several regions of the country.").

The ALJ appropriately gave reasons for the RFC determination and ultimately found that the claimant was not disabled. *See Hill v. Astrue*, 289 Fed. Appx. 289 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The essence of the claimant's appeal is that the Court should reweigh the evidence and reach a different result, which the Court simply may not do. *See, e. g., Casias*, 933 F.2d at 800. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is

therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

    **DATED** this 3rd day of September, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**